[No. 19234.   Department One.   June 10, 1925.]

NORTHWEST HAY ASSOCIATION, *Appellant*, v. N. C. HANSON *et al., Respondents.*[1]

ASSOCIATIONS (1-1)—RIGHTS AND LIABILITIES—CONTRACTS—STATUTES—CONSTRUCTION. Rem. Comp. Stat., § 2892, requiring that contracts between a co-operative marketing association and its members shall contain a date upon which "settlement" will be made between the association and its members for the produce "marketed" by the association during the preceding marketing season, which date shall not be later than July 1 of the following year, merely requires payment for the produce sold prior to that date, and does not prevent the association from holding produce over after July 1st for a better price, without settlement or "payment" to the members prior to July 1st for produce so held over.

Appeal from a judgment of the superior court for Walla Walla county, Mills, J., entered January 17, 1925, upon sustaining a demurrer to the complaint, dismissing an action for an injunction. Reversed.

*A. C. Cherry* and *Sharpstein, Smith & Sharpstein,* for appellant.

*John C. Hurspool* and *Cary M. Rader,* for respondents.

BRIDGES, J.—The purpose of this action was to enjoin defendants Hanson and wife from selling their hay to their codefendants or to anyone other than the plaintiff. The trial court sustained a demurrer to the complaint, and the plaintiff having refused to further plead, a judgment was entered dismissing the suit.

The appellant is a cooperative marketing association organized and existing under § 2878 *et seq.,* Rem. Comp. Stat. [P. C. § 134-46], and respondent Hanson is a member thereof. In September, 1923, the appellant and the respondent entered into a written agree-

[1]Reported in 236 Pac. 561.

ment by the terms of which the latter agreed to deliver to the former, for purposes of sale, all hay raised by him during the years 1923 to 1927, both inclusive. The complaint sets out this contract and alleges that, in compliance therewith, Hanson delivered to the appellant. a portion of his 1923 crop and that he had failed and refused to deliver the remainder of it to appellant, but, in violation of his agreement, had sold a part of it to other persons. The hay delivered to the appellant was, in accordance with the terms of the contract, put in a pool with other 1923 hay which was delivered to it by others of its members. The total amount of hay thus pooled was 4,900 tons; 2,900 tons of this hay had been sold prior to July 1, 1924, but at that time, and at the time of the commencement of this suit, the other 2,000 tons in the pool had not been sold, but were being held because of the unsatisfactory condition of the hay market. By July 1, 1924, the respondent had been paid his portion of the pooled money, but it is conceded that, when the balance of the pooled hay was sold, he would have other sums coming to him.

The statute with reference to the organization and powers of cooperative marketing associations (§ 2892, Rem. Comp. Stat.) [P. C. § 134-60], provides for the association and its members making marketing contracts, and then contains the following provision: "provided, further, that said contracts shall contain a date upon which settlement will be made between the association and each of its members for the crop of produce marketed by said association during the preceding marketing season, which date shall not be later than July 1, following the year in which any such crop or product has been produced."

It is respondent's position, as we understand it, that, under the terms of this statute, together with the marketing contract (to which we will particularly refer

later), it was the duty of the appellant to pay him before July 1, 1924, for all of the 1923 hay delivered by him to the association, and that, since the complaint alleges that such had not been done, there was a breach of the contract on the part of the appellant, and on account thereof it would not be permitted to maintain this action to require the respondent to deliver the remainder of his 1923 crop of hay. It is appellant's position that, under the statute and the contract between the parties, it was not required to sell all of the 1923 hay by July 1, 1924, but that it was required to pay for only such as it had actually sold prior to July 1, 1924. Or, to state the controversy more simply, the appellant, as we understand it, contends that it had a right to carry over after July 1, 1924, such portions of the 1923 crop as in its judgment it was inadvisable to place on the market because of market conditions, while the respondent contends that there can be no holding over of the 1923 crop after July 1, 1924. It is therefore plain that the chief question before us is the construction of the statute quoted and a provision of the marketing contract which is similar thereto.

The parties have elaborately argued economic questions concerning the marketing of farm products and the objects and usefulness of cooperative associations. It is strongly urged by the appellant that, to accept respondent's construction of the statute, would be to destroy all the benefits that the grower might obtain through cooperative marketing, because the association would thereby be forced to throw produce on the market when it was not prepared for it, and thus the price would be beaten down in the same way as where growers individually sold their crops. On the other hand, Hanson as vigorously contends that to give the statute the construction appellant desires would be to

destroy all benefit to be derived from such associations, because as a rule growers must sell the old crop before the new one is brought in, in order to live and continue farming.

We may look at these arguments only for the purpose of determining, if possible, the meaning of the legislative act. We may not consider the wisdom of any legislative provision.

We are unable to give the statute or the marketing contract the construction given them by the learned trial court. We think the statute quoted must be construed to mean that the marketing contract shall contain a date, which shall not be later than July 1 following the year in which any crop is produced, on or before which the association must pay the member for such portion of the crop as has been at that date sold by the association. The word "settlement" in the statute, it seems to us, must mean "payment," and the word "marketed" must mean "sold," and so paraphrasing the statute, it would read thus:

"Provided further, that said contract shall contain a date upon which payment (settlement) will be made between the association and each of its members for the crop or produce sold (marketed) by said association during the preceding marketing season, which date shall not be later than July 1 following the year in which any such crop or product has been produced."

The statute simply requires the association to pay the producer for such portion of the crop as has been sold, and does not, in our opinion, prohibit carrying over by the association where such carrying over is considered wise because of marketing conditions. Whether the statute is a wise one or not is for the determination of the legislature.

The marketing contract between the parties closely follows the wording of the statute. After providing

that the association shall have authority to pool the hay of its various members, it says: "payments to be made from time to time as rapidly as possible in due proportion until the accounts in each pool of the season are completely settled, and final settlement for each season shall be made by July 1 of each year upon hay marketed prior to that date." This simply means that if the hay in a pool is sold, payment therefor shall be made to the producer in proportion to the amount that he has in the pool, and such payment shall, in no event, be made later than July 1 following the year the crop is produced, for such portion of that crop as shall have been sold by the association on or before that date.

It appears from the complaint that on July 1, 1924, the respondent had been paid in full for such portion of his 1923 crop as had been sold prior to that date, and that the remainder had been held over because of market conditions. It follows that the complaint shows that the appellant had lived up to the terms of its contract.

The judgment is reversed, and the cause remanded for further proceedings.

TOLMAN, C. J., MAIN, PARKER, and ASKREN, JJ., concur.